IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK04-43115 |
| | ) | |
| DONALD WAYNE DUNCAN and | ) | |
| DOREEN JOYCE DUNCAN, | ) | CH. 7 |
| | ) | |
| Debtors. | ) | |
| DOREEN JOYCE DUNCAN, | ) | CASE NO. A05-4106 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EDUCATIONAL CREDIT MANAGEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Trial was held in Lincoln, Nebraska, on January 11, 2007, on Plaintiff's complaint to determine dischargeability of student loans under 11 U.S.C. § 523(a)(8). Lea Wroblewski appeared for Plaintiff. Gary L. Young and Joel A. Bacon appeared for Defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

Plaintiff seeks an "undue hardship" discharge of her student loan obligations owed to Defendant. The amount owed as of January 1, 2007, is $13,837.59. For the reasons set forth below, I find that excepting this debt from discharge would impose an undue hardship on Plaintiff.

*Findings of Fact*

1.   Plaintiff and her husband filed their Chapter 7 proceeding on September 2, 2004, Case No. 04-43115.

2.   The Chapter 7 was determined to be a "no asset" case and a discharge was entered on December 8, 2004.

3.   Plaintiff received approval to reopen the Chapter 7 proceeding in order to file this adversary proceeding.

4.   Prior to filing the Chapter 7 proceeding, Plaintiff was diagnosed with breast cancer and incurred substantial medical bills. Plaintiff testified that the cancer is now in remission, although she continues to receive medical care for it.

5.   Plaintiff's Chapter 7 schedules reveal that medical bills constituted most of the unsecured debt.

6.   Plaintiff's uncontroverted testimony is that she filed the Chapter 7 proceeding because her husband was very ill, they could not make ends meet with all the bills, and her wages were being garnished.

7.   Plaintiff's husband died on October 5, 2004, while the Chapter 7 proceeding was still pending.

8.   In the mid-1990s, Plaintiff used the proceeds from the student loan at issue to obtain an Associate's Degree in printing, layout, and design from a technical school in Hastings, Nebraska. Following graduation, Plaintiff attempted to obtain employment in the field of her degree, but was unsuccessful.

9.   Plaintiff is a 56-year-old widow living in an apartment in Beatrice, Nebraska with her 81-year-old mother. Plaintiff's mother uses her Social Security income, which is her sole source of income, to contribute one-half of the monthly rent and utilities paid by Plaintiff.

10.  Plaintiff drives a 1995 Pontiac Grand Prix, which she testified to be in very bad shape and in need of substantial repairs.

11.  In addition to follow-up care for the breast cancer, Plaintiff also testified to having had a colostomy and suffers from high blood pressure. Plaintiff's prescription expense is approximately $55.00 per month.

12.  At the time of the bankruptcy filing, Plaintiff had expenses that exceeded her income as set forth in Schedules I and J.

13.  Between the date of the bankruptcy filing and the current date, Plaintiff's financial situation changed somewhat as a result of her mother helping to pay household bills and as a result of her completion of payments on an automobile loan. However, Plaintiff also indicated that she has no excess income.

14.  The balance due on Plaintiff's student loan debt as of January 1, 2007, is $13,837.59. Interest continues to accrue at the rate of 8% per annum.

15.  Under the William D. Ford Federal Direct Loan Program, there are several repayment options that could be available to Plaintiff. If Plaintiff chose the standard option, which would involve repayment of the loan over 120 months, the initial monthly payment would be

approximately $167.89. Under the extended option, the term would be 180 months, and the initial payment would be approximately $130.24. Under the graduated option, under which the payment would increase after two years and would last for 180 months, the initial monthly payment would be approximately $92.25. Under the income contingent repayment plan, the initial monthly payment would be approximately $99.16, and would last almost 25 years.

16.     Plaintiff has not taken advantage of any of the options under the Ford program because she feels she simply cannot make payments in those amounts.

17.     Plaintiff has been working at Wal-Mart for approximately five years as a sales clerk and makes approximately $9.27 per hour.

*Analysis*

The Eighth Circuit is one of only two circuits which has not adopted the three-part test for determination of "undue hardship" articulated in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2nd Cir. 1987). Instead, the Eighth Circuit has expressly declined to adopt the *Brunner* test and instead has adopted the "totality-of-the-circumstances" test. *Long v. Educational Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003). The Court of Appeals stated:

> We prefer a less restrictive approach to the "undue hardship" inquiry. We are convinced that requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in § 523(a)(8)(b). Therefore, we continue – as we first did in *Andrews* – to embrace a totality-of-the-circumstances approach to the "undue hardship" inquiry. We believe that fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.
>
> In evaluating the totality-of-the-circumstances, our bankruptcy reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation – including assets, expenses, and earnings – along with the prospect of future changes – positive or adverse – in the debtor's financial position.

322 F.3d at 554-55 (citations omitted).

The Eighth Circuit Bankruptcy Appellate Panel has recently provided guidance with respect to the weight to be given to the availability of repayment programs, such as the income contingent

repayment plan. In the case of *Lee v. Regions Bank Student Loans (In re Lee)*, 352 B.R. 91 (B.A.P. 8th Cir. 2006), the Eighth Circuit Bankruptcy Appellate Panel stated:

> Finally, the availability and terms of the ICRP [Income Contingent Repayment Plan] should not be given undue weight under the totality of circumstances analysis because it serves a fundamentally different purpose than the discharge provisions (and exceptions thereto) of the Bankruptcy Code. A survey of the legislative history behind legislation related to the ICRP indicates that its primary goal is to assist borrowers in avoiding default. In contrast, the Bankruptcy Code serves to provide a fresh start to "honest but unfortunate debtors," most of whom have already defaulted on their obligations (including student loans). The ICRP provides temporary relief from the burden of a student loan, but it does not offer a fresh start. Some aspects of the ICRP might even be viewed as inimical to the goals of the fresh start because the ICRP allows for negative amortization of the student loan debt and a potentially significant tax bill if the student loan is ultimately forgiven after 25 years.

352 B.R. at 96-97 (footnotes omitted).

Defendant's argument is basically that the specific identifiable monthly expenses to which Plaintiff testified add up to approximately $244.00 less than Plaintiff's actual monthly income and, therefore, Plaintiff should be able to make a $99.00 per month payment under the income contingent repayment plan and still have money left over. However, Defendant overlooks several factors. Plaintiff's testimony as to her monthly expenditures revealed that Plaintiff did not specifically identify all of her actual expenses. She has not included any expenditures for clothing, laundry, recreation, entertainment, newspapers, magazines, charitable contributions, or personal expenses. Certainly, a minimum standard of living would include some such expenditures. This Plaintiff clearly is not living an extravagant lifestyle and, in fact, Defendant did not even attempt to challenge any of her listed monthly expenditures. Further, in the monthly expenditures, only $25.00 per month is included for medical expenses. Plaintiff testified that she pays approximately $25.00 per month because that is all she can afford at this time. She clearly owes substantially more than that and, as a result of her cancer, colostomy, blood pressure, and related medical conditions, she will incur additional medical expenses into the foreseeable future. Defendant cannot disregard the fact that Plaintiff owes more than $25.00 per month in medical expenses just because she currently pays only $25.00 per month based on her ability to pay.

Another factor having a bearing on Plaintiff's future financial situation is the fact that the automobile she drives is approximately 12 years old and in very poor shape. It is not a stretch of the imagination to assume that Plaintiff will need to replace her vehicle in the very near future and that her future financial prospects will include a monthly car payment. Finally, Defendant's position fails to consider that Plaintiff is only able to make ends meet at this time as a result of contributions to household expenses made by her 81-year-old mother, who also suffers from her own health problems. Plaintiff's expenses did exceed her income at the time of bankruptcy filing. Giving consideration to the foregoing, in particular the need to include additional expenses as set forth

above, it appears that Plaintiff's actual monthly expenses do exceed her income or at least will in the near future.

Upon consideration of Plaintiff's past, present, and reasonably reliable future financial resources and other relevant facts surrounding Plaintiff's particular circumstances as discussed above, it appears that excepting the student loan owed to Defendant from discharge would impose an undue hardship on Plaintiff. Therefore, Plaintiff is hereby granted a discharge of her student loan obligations owed to Defendant.

Separate judgment to be filed.

DATED:  January 16, 2007.

BY THE COURT:

 /s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
\*Lea Wroblewski
Gary L. Young/Joel A. Bacon
Joseph H. Badami
U.S. Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.